IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WILLIE JANE PRICE,

    Plaintiff,

v.                                                                                               No. 13-1020

CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

    Defendant.
_____

ORDER REVERSING THE DECISION OF THE COMMISSIONER
AND REMANDING FOR RECONSIDERATION
_____

**I. Introduction and Procedural Background**

Before the Court is the Social Security claim of Plaintiff, Willie Jane Price, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Carolyn W. Colvin, Commissioner of Social Security ("Commissioner"), denying her claim for disability insurance benefits and supplemental security income. On May 26, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging a disability onset date of May 4, 2009. Both claims were initially denied on December 8, 2009, and again on March 1, 2010, following reconsideration. On April 3, 2010, Price requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on January 25, 2011. The ALJ, Jerry M. Lang, issued an unfavorable decision on September 19, 2011. Price appealed the ALJ's decision, and that ruling

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

became the final decision of the Commissioner when the Appeals Council denied Claimant's appeal on December 4, 2012. She later timely filed this action seeking the Court's review of the ALJ's decision.[2]

## II. Standard of Review

A federal court's review of the Social Security Administration's denial of a claim for benefits "is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). "Substantial evidence requires more than a mere scintilla but less than a preponderance; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (internal quotation marks omitted). "If substantial evidence supports the ALJ's decision, then reversal is unwarranted even if substantial evidence backs the opposite conclusion." *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 639 (6th Cir. 2016) (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

To establish eligibility for disability benefits, an applicant must show an inability to engage in any substantial gainful activity resulting from a long-lasting impairment. 42 U.S.C. §§ 1382c(a)(3)(A) & 423(d)(1)(A); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 903 (6th Cir. 2016). The Social Security Act (the "Act") places the burden of establishing entitlement to

---

[2] Claimant filed a prior application for disability insurance benefits on August 24, 2000, which was denied initially and on reconsideration. (D.E. 8-4 at PageID 103.) Following a hearing, ALJ Thomas Stroud issued an unfavorable decision on February 8, 2003. (*Id.*) ALJ Stroud determined Price had the following severe impairments: coronary artery disease, diabetes mellitus, and degenerative disc disease. (*Id.* at PageID 104.) The ALJ found Price could not perform past relevant work as a nursing assistant but determined she had the capacity for sedentary work, concluding she was not disabled. (*Id.* at PageID 110.) However, the record reflects that Plaintiff did indeed return to her previous job as a nursing assistant until reinjuring her back in 2009. (D.E. 8-3 at PageID 78.)

benefits on a claimant. *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 682 (6th Cir. 2011). Thus, a claimant bears the burden of proving that she has a disability within the meaning of the Act. *Siebert v. Comm'r of Soc. Sec.*, 105 F. App'x 744, 746 (6th Cir. 2004) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). If a claimant meets this burden, the Commissioner is charged with demonstrating that employment is available despite her disability and background. *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). The Social Security Administration employs a five-step sequential inquiry when processing applications for disability benefits:

> (1) Does the claimant show she is not engaged in substantial gainful activity? (2) Does the claimant have a severe impairment? (3) Does the impairment meet any one of the items on a list of impairments presumed severe enough to render one disabled? (4) Can the claimant perform her past jobs? (5) Can the claimant perform other jobs that exist in significant numbers in the national economy?

*Taskila*, 819 F.3d at 903 (internal quotation marks omitted).

### III. Relevant Evidence from the Record

**A. Hearing Testimony**

Price was born on August 14, 1964, and was forty-six years old at the time of her hearing before the ALJ. (D.E. 8-4 at PageID 117.) She was five feet, six inches tall and weighed 215 pounds. (D.E. 8-3 at PageID 87.) Claimant has a limited education, having completed only the seventh grade. (D.E. 8-7 at PageID 229.) Nevertheless, she gained certification as a nursing assistant and worked in that capacity for twenty-two years. (D.E. 8-3 at PageID 77-78.) According to Price, she injured her back on three separate occasions while working as a nursing assistant. (*Id.* at PageID 78.) Plaintiff testified that she first injured her back in 1991 and had experienced back problems since that time. (*Id.* at PageID 79.) She described the most recent injury, which precipitated the present disability claim, as occurring while attempting to lift a

3

patient out of a chair, saying that the patient "yank[ed]" her forward, which caused her back to "pop." (*Id.* at PageID 78-79). She said that she last worked in late-May of 2009 (*Id.* at PageID 80.)

Claimant reported that she had two disc bulges in her back, degenerative disc disease, and spinal stenosis. (D.E. 8-3 at PageID 80.) She said that she applied both heat and ice packs to her back "at least three times" per week. (*Id.* at PageID 86.) She further related that she suffered from diabetes, which led to "peripheral neuropathy," a condition that caused the loss of sensation in her hands and feet. (*Id.* at PageID 81-82.) Plaintiff stated that the numbness in her hands rendered her unable to perform activities involving "fine manipulation," including typing, and that her ability to grab with her hands was diminished. (*Id.* at PageID.) According to Price, the peripheral neuropathy also caused "a lot of bleariness" in her eyes, which required her to frequently flush her eyes with baby shampoo and apply heat compressions twice daily. (*Id.* at PageID 82.)

Plaintiff recalled that she had suffered two heart attacks and that she had two stents inserted, one in her right artery and one in her main artery. (D.E. 8-3 at PageID 83.) She testified that the heart attacks caused residual weakness in her arms, that she wore braces on her wrists, and that her left wrist was worse than her right. (*Id.* at PageID 84-85.)

According to Plaintiff, she had trouble sitting and standing for long periods of time and could not "lift hardly anything." (D.E. 8-3 at PageID 88-89.) She related that she "stay[ed] depressed," saying that it had been difficult for her to lose her ability to work because she loved her previous job and wished to return to work. (*Id.* at PageID 90.) She said that someone came to her house to help her with household chores, which she was no longer able to complete. (*Id.* at PageID 96-97.)

**B. Medical Records**

On February 9, 2009, Claimant presented to the Crockett County Health Department ("Health Department") complaining of insomnia for the past three days and chest pain, including palpitations and sharp pain in the center of her chest lasting for two to three minutes at a time. (D.E. 8-9 at PageID 306.) She reported no chest discomfort at the time of her appointment. (*Id.*) An electrocardiogram was ordered and she was advised to go to the emergency room if she experienced subsequent chest pain. (*Id.*)

Treatment records from a May 13, 2009 Health Department visit reflect that Price presented with complaints of back and leg pain, which had been present since the previous Tuesday. (D.E. 8-9 at PageID 303.) Her medical records indicate that she had been treated the previous Friday at the Jackson Madison County General Hospital ("JMCGH") emergency department, where she was diagnosed with lumbosacral radiculopathy. (*Id.*) At JMCGH she was prescribed Prednisone and Lortab. At the Health Department, Claimant reported pain in the "lower SI joint radiating down back [left] leg into foot" and said that the medicine she received at JMCGH was not providing relief. (*Id.*) She was identified with lumbosacral radiculopathy, diabetes mellitus Type 2, hypertension, and arteriosclerotic heart disease. (*Id.*) Magnetic resonance imaging ("MRI") of her lower spine was ordered. (*Id.*)

Plaintiff returned to the Health Department on May 26, 2009, to receive the results of her MRI and again complained of "sharp, dull, aching" back pain, worse on the left side, indicating that the pain medication was not offering her complete relief. (D.E. 8-9 at PageID 302.) The MRI revealed moderate to severe central canal stenosis at L4-L5, which was noted as "new since 2000" and "caused by facet joint arthritis and a small disc bulge superimposed on congenital

central canal narrowing." (D.E. 8-10 at PageID 387.) Severe left neural foraminal stenosis was noted at L4-L5, also caused by facet joint arthritis. (*Id.*) The L5-S1 disc appeared normal with mild to moderate facet joint arthritis bilaterally and mild left neural foraminal stenosis. (*Id.*) Price was referred to a neurosurgeon with instructions to take her MRI report. (*Id.* at PageID 331.) Her treatment plan also included a goal to reduce her blood pressure[3] and prescribed use of a heating pad followed by application of an over the counter pain-relief cream. (*Id.*)

On May 28, 2009, Claimant went to West Tennessee Neurosciences where she was treated by Dr. Joseph Rowland. (D.E. 8-9 at PageID 317.) Price's chief complaints were of back and bilateral leg pain, worse on the left. (*Id.*) Notes from her office visit recorded the results of her most recent MRI, which showed "significant degenerative disc disease, spinal stenosis at L4, which ha[d] increased, and foraminal stenosis without disc herniation." (*Id.*) Past medical history included complaints of back pain and arthritis "for many years," diabetes, and irritable bowel syndrome. (*Id.*) She was observed to walk with a limp due to the reported pain. (*Id.*) Examination also showed limitation of bending in all directions. (*Id.* at PageID 320.) Sensation to pin, vibration, and position was noted as normal with a slightly decreased sensation at the lateral aspect of the left foot. (*Id.* at PageID 318.) Plaintiff was diagnosed with chronic back pain "with exacerbation with spinal stenosis." (*Id.*) Dr. Rowland presented her with three options for treatment: (1) hot showers, heat, massage, and medication; (2) epidural nerve block; or (3) surgical decompression. (*Id.*) Price opted for the nerve block. (*Id.*) However, according to notes from a June 2009 visit to the Health Department, she reported that she could not afford the procedure, and it was never administered. (D.E. 8-10 at PageID 403.)

---

[3] Records reflect that her blood pressure was elevated each time she visited the Health Department.

Plaintiff was referred by the Tennessee Disability Determination Section for a psychological evaluation with mental status examination, which was performed by Dr. Robert Kennon on August 3, 2009. (D.E. 8-9 at PageID 325.) Dr. Kennon noted that Claimant was "generally cooperative, and pleasant," although she appeared "somewhat depressed in her general presentation." (*Id.*) Her gait was slow, and she was noted to be fidgety and in apparent "significant pain." (*Id.*) Her examination resulted in findings that Plainitff was labile, had an inappropriate mood state, was tearful, and fatigued. (*Id.* at PageID 327.) Price was noted as being "sad and sullen in her presentation," and she related to the examiner that she felt worried and overwhelmed. (*Id.*) She reported that her primary stressors were her physical limitations and chronic pain. (*Id.*) She demonstrated difficulty controlling anger and admitted to feeling easily agitated with a reduced frustration to stress tolerance. (*Id.*) Plaintiff described feeling hopeless about her future and related chronic sleep disturbances resulting from her pain. (*Id.*) The examiner "detected no evidence of attempts to malinger, feign, or portray herself in a negative light," describing her as "honest, candid, and revealing." He opined that Claimant was depressed by her inability to work. (*Id.*)

Dr. Kennon ultimately diagnosed Price with major depressive disorder, moderate severity. (D.E. 8-9 at PageID 328.) In summary, he concluded that she was able to understand and carry out "short-simple instructions," that she demonstrated mild to moderate difficulty in handling detailed instructions, and that she was able to make judgments on simple work-related decisions. (*Id.*) In Dr. Kennon's opinion, Plaintiff was able to "interact effectively with others," although she was susceptible to pressure and could become easily overwhelmed. (*Id.*) He further determined that she could have difficulty dealing with pressure in a work setting. (*Id.*)

On August 10, 2009, Price was examined by state physician Donita Keown. (D.E. 8-9 at PageID 331.) Dr. Keown's notes state that Claimant had "a great deal of pain behavior to the points [sic] interfering with exam." (*Id.* at 332.) The doctor characterized Price's effort as not "acceptable" or "reliable." (*Id.*) Specifically, she noted that Claimant was "moaning, groaning, pulling away and acting as though she cannot tolerate light touch," but she had no increase in heart rate or any other physiological signs of stress. (*Id.*) Dr. Keown also noted that Plaintiff advised she had not followed through with the nerve block. (*Id.* at PageID 331.)

Dr. Keown's examination indicated regular rhythm and rate of the heart, with no murmurs, rubs, or gallops. (D.E. 8-9 at PageID 332.) Although Dr. Keown tested Claimant's flexibility in her hips, knees, c-spine, and thoracolumbar column, her overall impression was that Price was "not giving effort" to the exam, including "pushing pulling and carrying on such that it interrupt[ed] the evaluation." (*Id.* at PageID 333.) The doctor found that Plaintiff was able to lift on toes and heels and demonstrated intact motor strength in both lower limbs. (*Id.*) Price was noted to walk at a sluggish place but was able to move around the exam room without assistance. (*Id.*) Dr. Keown concluded that Claimant could sit for six to eight hours in an eight-hour day, walk or stand for four to six hours in an eight-hour day, perform occasional lifting of twenty to twenty-five pounds, and more frequent lifting of ten to twelve pounds. (*Id.* at PageID 334.)

Price visited the Health Department in August 2009, complaining of insomnia. (D.E. 8-10 at PageID 383.) Treatment notes reflect that she was depressed and tearful with puffy eyes caused by crying. (*Id.*) She presented again in October with complaints of trouble sleeping and depression but indicated that she could not afford mental health treatment. (*Id.* at PageID 377.)

Dr. Aileen McAlister completed a medical consultant analysis on December 7, 2009, and opined that Plaintiff had a moderate mental impairment. (D.E. 8-9 at PageID 336.) In a

Psychiatric Review Technique form, Dr. McAlister evaluated Price's functional limitations resulting from her mental impairment, assessing moderate difficulties maintaining social functioning and concentration, persistence, or pace. (*Id.* at PageID 349.) She stated that Claimant's mental impairment had worsened since the prior ALJ's decision, noting her increased difficulty with frustration tolerance and social isolation. (*Id.* at PageID 351.) In a mental Residual Functional Capacity ("RFC") assessment, Dr. McAlister found that Price was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from her mental impairment, interact appropriately with the public, accept instructions and respond appropriately to criticism from superiors, get along with coworkers, and respond appropriately to changes in the workplace. (*Id.* at PageID 353-54.) Overall, the doctor concluded that Price was capable of interacting with coworkers and the public on only an infrequent basis and that supervision "should be supportive and non-confrontational," with "[c]hange in the workplace introduced slowly." (*Id.* at PageID 355.) Dr. George Davis reviewed and affirmed this assessment on February 23, 2010. (D.E. 8-10 at PageID 408.)

On December 26, 2009, Plaintiff was seen at the Humboldt General Hospital emergency department complaining of back pain. (D.E. 8-11 at PageID 413.) She reported that she had been taking 600 milligrams of Ibuprofen up to three times per day but without relief. (*Id.*) Examination revealed tenderness in her lower back. (*Id.* at PageID 415.) She received prescriptions for Ultram and Robaxin and was discharged. (*Id.* at PageID 416.)

Plaintiff presented to Dr. Robert Talac at West Tennessee Neurosciences on April 1, 2010, complaining of low back pain radiating bilaterally down to her toes, worse on the left side.

(D.E. 8-11 at PageID 421.) Claimant described stabbing pain across her lower lumbar area and reported significant difficulty walking, saying that she had to sit down after twenty-five yards. (*Id.*) However, she stated that sitting did somewhat alleviate her symptoms. (*Id.*) She also complained of numbness in both hands. (*Id.*) Dr. Talac diagnosed moderate to severe lumbar spondylosis, carpal tunnel syndrome, and lumbar canal stenosis. (*Id.* at PageID 424.) The doctor recommended a lumbar facet nerve block. (*Id.*)

On April 3, 2010, Price was transported by ambulance to the JMCGH emergency department after suffering chest tightness with radiation to the left arm and shortness of breath. (D.E. 8-13 at PageID 548.) She was diagnosed with non-ST elevation myocardial infarction. (*Id.* at PageID 542.) Cardiac catheterization was performed and a stent was placed in the left anterior descending artery. (*Id.*) She was discharged one day later. (*Id.*)

Plaintiff began seeing a chiropractor, William White, on June 24, 2010. (D.E. 8-11 at PageID 462.) Notes from her first appointment indicate she had difficulty with her range of movement due to pain, with noted tenderness in the lumbar region. (*Id.*) Records reflected a total of twelve visits to Dr. White's office through August 4, 2010. (*Id.* at PageID 458-60.) These records are difficult to decipher, contain no narratives regarding the treatment, and are not signed by a provider. (*Id.*) However, the documents do indicate that Claimant reported feeling "better" at the majority of her appointments. (*Id.*)

Dr. White submitted a Medical Source Statement ("MSS") on November 18, 2010, wherein he assessed Claimant's ability to perform work-related activities on a regular and continuous basis. In that form, he assessed the following abilities: occasional lifting and carrying of up to ten pounds and never lifting or carrying more than 10 pounds; sitting up to four hours at a time and no more than four hours in an eight-hour work day; standing up to one hour at a time

10

and no more than one hour total in an eight-hour work day; with respect to the use of hands, never reaching overhead but otherwise reaching, handling, fingering, feeling, pushing/pulling continuously; operating foot controls continuously; never performing postural activities (climbing, balancing, stooping, kneeling, crouching, and crawling); never being exposed to unprotected heights or moving mechanical parts, occasionally operating a motor vehicle, and otherwise able to tolerate exposure to a range of environmental conditions. (D.E. 8-14 at PageID 626-634.)

Price underwent a consultative physical examination on May 12, 2011, with Dr. Stephen Goewey. (D.E. 8-15 at PageID 643.) Dr. Goewey documented her history of coronary artery disease, with two myocardial infarctions, both requiring catheterization and stenting procedures; uncontrolled diabetes mellitus, type 2, with "likely diabetic peripheral neuropathy"; uncontrolled hypertension; and obesity. (*Id.* at PageID 645.) The doctor noted suboptimal effort during part of the exam. (*Id.*) Dr. Goewey completed a MSS and assessed the following functional limitations: continuously lifting up to twenty pounds, frequently lifting up to fifty pounds, and occasionally lifting up to one-hundred pounds; continuously carrying up to ten pounds, frequently carrying up to twenty pounds, occasionally carrying up to fifty pounds, and never carrying over fifty pounds; sitting up to two hours, standing up to one hour, and walking up to thirty minutes; sitting for up to six hours, standing up to four hours, and walking up to three hours total in an eight-hour workday; no limitations to the use of hands; frequent operation of foot controls; with respect to postural activities, frequently climbing stairs/ramps, occasionally climbing ladders/scaffolds, and frequently balancing, stooping, kneeling, crouching, and crawling; occasionally operating a motor vehicle, and otherwise able to frequently or continuously be exposed to a host of environmental conditions. (*Id.* at PageID 637-42.)

## IV. The Administrative Decision

After hearing testimony and reviewing evidence in the record, the ALJ determined that Claimant's back disorder, heart disease, diabetes mellitus, obesity, and hypertension qualified as severe impairments for purposes of the Social Security Regulations. (D.E. 8-3 at PageID 62.) The ALJ found that Price's irritable bowel syndrome and depression were non-severe. (*Id.* at PageID 62-63.) He determined that Price suffered "from no more than a mild restriction in activities of daily living, mild difficulties in social functioning, and mild difficulties in concentration, persistence or pace . . . ." (*Id.* at PageID 63.) Little weight was assigned "to the State agency psychologists . . . who all concluded that the [she] had moderate mental limitations" because Price had received no specialist psychiatric care and was taking an anti-depressant "with no significant difficulties noted." (*Id.*) Additionally, Plaintiff had denied significant social deficits during the psychological consultative examination and had "a strong work history," which she reportedly stopped "due to back pain, not mental difficulties." (*Id.*) The ALJ concluded that Claimant's depression had "no more than a minimal impact on her ability to perform basic work activities." (*Id.*)

The ALJ further determined that none of Claimant's severe impairments met the qualifications in the Medical Listings. (D.E. 8-3 at PageID 63.) In making this determination, the ALJ considered whether Price's obesity exacerbated any of the severe impairments but concluded that she had no additional or cumulative limitations attributable to her weight. (*Id.* at PageID 64.)

The ALJ found that Price had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (D.E. 8-3 at PageID 64.) He concluded that "[C]laimant's medically determinable impairments could reasonably be expected to cause

the alleged symptoms" she complained of. (*Id.* at PageID 65.) However, he discredited her statements regarding "the intensity, persistence and limiting effects of these symptoms . . . to the extent they [we]re inconsistent with" the RFC. (*Id.*) The ALJ noted that Plaintiff was treated by a chiropractor, Dr. White, from June to August 2010 and that she reported her condition was "better" at each appointment. (*Id.* at PageID 66.) He gave "some weight" to Dr. White's opinion that Claimant was limited to sedentary work but could not reach overhead with her hands; however, he noted that the chiropractor was not an acceptable medical source and that there was an "insufficient treating relationship with only one or two visits with Dr. White." (*Id.*) In support of his RFC determination, the ALJ stated that he did not find Price credible, in part based on the fact that "suboptimal effort was noted during two physical consultative examinations." (*Id.*) Nevertheless, although Dr. Keown's opinion was consistent with a light RFC, the ALJ concluded that based on subsequent treatment records, in particular Claimant's 2010 myocardial infarction, she was currently more limited in her physical abilities. (*Id.* at PageID 67.) Similarly, he gave little weight "to the State agency physicians who provided [RFC] assessments at the initial and reconsideration levels and concluded that the [C]laimant is capable of a limited range of light level work." (*Id.*) Rather, the ALJ gave Plaintiff "every benefit of the doubt" in concluding she could perform only sedentary work. (*Id.*)

Ultimately, the ALJ summarized that "[C]laimant's ability to drive and shop, in conjunction with the medical evidence demonstrating some compliance issues, symptom exaggeration and relatively minimal abnormalities during physical examinations, reflect a fairly significant [RFC] and not an individual unable to sustain regular and continuing work due to medically determinable impairments." (D.E. 8-3 at PageID 67.) Finally, the ALJ found that Price was unable to perform past relevant work but that there were jobs in significant numbers in

the national economy that she was capable of performing. (*Id.*) Consequently, the ALJ concluded that she was not disabled. (*Id.* at PageID 68.)

V. Analysis

In the present action, Price contends that the ALJ erred in the following four ways:

1. he failed to properly consider all of her impairments and did not provide sufficient reasons for concluding these impairments to be non-severe;

2. he "significantly misrepresented" evidence from her treating chiropractor and failed to properly apply Social Security Ruling ("SSR") 06-3p in evaluating Dr. White's opinions;

3. he failed to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p; and

4. he did not obtain testimony from a vocational expert, instead improperly relying on the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P. App. 2.

Claimant requests that this Court reverse the final decision of the Commissioner or, alternatively, remand for further consideration by a new ALJ.

**A. Determination that Depression was Non-Severe**

First, Plaintiff complains that the ALJ erred in finding that she did not have severe mental impairments and that he did not sufficiently explain the rationale behind this determination. Defendant responds that so long as some impairments are found at step two, the specific impairments listed in that step are irrelevant, citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Because the ALJ determined that Claimant suffered from other severe impairments, Defendant avers that Price is not entitled to relief on this basis.

The Sixth Circuit has characterized the severity determination as "a de minimis hurdle in

the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The goal of assessing severity is "to screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Accordingly, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862. Because an ALJ is required to consider both severe and non-severe impairments in the remaining steps of the sequential analysis, the failure to consider some impairments non-severe may be harmless error. *Maziarz*, 837 F.2d at 244. However, this is true only where an ALJ does in fact consider all of a claimant's impairments in the subsequent analysis. SSR 96-8p requires an AJL to "consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 3744184, at *5 (July 2, 1996) (emphasis added); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of [a claimant's] medically determinable impairments of which we are aware, including [her] medically determinable impairments that are not 'severe' . . . .").

In the present case, the ALJ did not mention Claimant's depression after step two. Notably, when assessing Price's RFC, ALJ Lang cited her "combination of ailments including diabetes mellitus, neuropathy, blurred vision, arthritis, irritable bowel syndrome, heart disease, and hypertension." (D.E. 8-3 at PageID 64.) However, the remaining sequential analysis is devoid of any evidence that the ALJ considered Plaintiff's history of depression, which was well-documented in the record. Regardless of the ALJ's determination that it was non-severe, he was required to consider her depression in his subsequent analysis. This omission requires reversal and remand to the ALJ who must consider Price's mental impairment when making his RFC assessment. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 191-92 (6th Cir. 2009)

(remanding after determining that ALJ's decision was not supported by substantial evidence where ALJ failed to incorporate claimant's demonstrated, although non-severe, mental impairments into her RFC); *Mish v. Comm'r of Soc. Sec.*, No. 1:09-cv-753, 2011 WL 836750, at *2 (W.D. Mich. Mar. 4, 2011) (remanding based on ALJ's failure to consider both severe and non-severe impairments after step 2 determinations).

Price requests that, in the case of remand, this Court direct that she receive a hearing before a different ALJ. However, she provides no basis for this request and makes no allegation that ALJ Lang is biased in any way. Accordingly, Claimant's request to remand to a different ALJ is denied. *See Nora Dent v. Astrue*, No. 07-2238-MaP, 2008 WL 822078, at *20 (W.D. Tenn. Mar. 26, 2008) (rejecting a plaintiff's request for remand to a new ALJ where no bias had been demonstrated).

## B. Opinion of Chiropractor William White

Next, Plaintiff contends that the ALJ "significantly misrepresented" medical evidence from her chiropractor, Dr. White. In particular, Price asserts that the ALJ misrepresented the nature and extent of Dr. White's treating relationship, that he failed to include limitations assessed by the chiropractor into her overall RFC, and that he did not provide his reasons for rejecting the chiropractor's opinion, as required.

Chiropractors are not medically acceptable sources, and their opinions should not be used to establish the existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a). Because they are not acceptable medical sources, treatment relationships with chiropractors are "not entitled to the special consideration of a treating physician under 20 C.F.R. § 404.1527." *Lucido v. Barnhart*, 121 F. App'x 619, 621 (6th Cir. 2005). However, evidence from "other sources," including chiropractors, *may* be used "to show the severity of [a claimant's]

16

impairment[] and how it affects [her] ability to work." 20 C.F.R. at § 404.1513(d). Administrative law judges retain "discretion to determine the appropriate weight to accord a chiropractor's opinion based on all evidence in the record since a chiropractor is not a medical source." *Walters*, 127 F.3d at 530.

SSR 06-3p provides additional guidance for evaluating the opinions from medical sources, such as chiropractors, that do not qualify as acceptable medical sources under the guidelines. SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006). In discussing the weight that should be accorded a chiropractor's opinion, SSR 06-3p states that "information from [chiropractors] *may* be based on special knowledge of the individual and *may* provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* at *2. (Emphasis added.) Additionally, the same factors relevant to evaluating opinions from acceptable medical sources can be applied to other source opinions as well. *Id*. at *4. These factors include: the extent of the relationship between the source and individual, including both duration and frequency of contact; how consistent the opinion is with the record as a whole; the adequacy of the evidence used to support the opinion; the quality of the source's explanation of the opinion; whether the source has an area of expertise related to the impairment(s) in question; and any other factors that support or refute the source's opinion. *Id.* at *4-5. However, "[n]ot every factor for weighing opinion evidence will apply in every case" and evaluation "will depend[] on the particular facts in each case." *Id.* at *5.

In the present case, the ALJ stated explicitly that he had considered opinion evidence in light of SSR 06-3p. He discussed Claimant's treatment history with Dr. White and placed "some weight" on his opinion, to the extent it was consistent with the ALJ's assessment of a sedentary RFC. Although Price complains that the ALJ did not "mention or address" the chiropractor's

17

opinion regarding each limitation he assessed, there is no such requirement. *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (explaining the difference between what an ALJ is required to consider versus what must be reduced to writing). Also, while Plaintiff asserts that the ALJ misrepresented her treating relationship with Dr. White, the record is unclear in this respect. As noted above, records from Dr. White's clinic document twelve visits over a four month period, but the individual notes are not signed by a provider. (D.E. 8-11 at PageID 458-60.) Additionally, other than the initial consultation with the chiropractor, which was signed by Dr. White, records from her visits are barely decipherable and without detail, providing little insight into Claimant's impairments other than her multiple self-reports that she felt "better" at most of her appointments. (*Id.*) The administrative decision reflects that the ALJ considered Dr. White's MSS and accredited it to the extent it was consistent with the rest of the record; he was required to do no more. *See Todd v. Comm'r of Soc. Sec.*, 44 F. App'x 690, 692 (6th Cir. 2002) (noting ALJ was not required to give special deference to chiropractor's report); *Wafford v. Comm'r of Soc. Sec.*, No. 1:09-cv-00805, 2010 WL 5421303, at *4 (S.D. Ohio Aug. 19, 2010) (finding ALJ's rejection of chiropractor's opinion based on fact that he was not an acceptable medical source was proper).

## C. Function-by-Function Assessment

Next, Plaintiff asserts that the ALJ erred by failing to include a function-by-function assessment when making his RFC determination as required by SSR 96-8p. In particular, Price contends that she suffered mental and postural limitations that the ALJ failed to discuss or incorporate into her RFC.

Although an ALJ is required to *consider* each function in his RFC assessment, SSR 96-8p does not require that each function be *discussed* in the adjudicator's decision. *See Delgado*, 30

F. App'x at 547. "'[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153, slip op. at 4 (3rd Cir. 2000) (unpublished table decision)). Additionally, the ALJ is ultimately responsible for determining an individual's RFC. *See Poe v. Comm'r Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Therefore, to the extent that she protests that the ALJ did not undertake a function-by-function analysis in his written decision, Plaintiff misinterprets SSR 96-8p's requirements. However, this issue is moot given that the ALJ has been directed to reassess Price's RFC upon remand.

### D. Reliance on Medical Vocational Guidelines

Finally, Claimant insists that the ALJ erred by failing to obtain testimony from a vocational expert ("VE"). Price argues that the ALJ should not have relied solely on the Medical Vocational Guidelines, *see* 20 C.F.R. pt. 404, subpt. P. App. 2, because she had "nonexertional limitations which necessitated the need for [VE] testimony at step 5."

The nonexertional impairment complained of—depression—was not factored into the ALJ's RFC assessment. "[I]t is *only* when 'the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate [RFC] level that nonexertional limitations must be taken into account and a non-guideline determination made.'" *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981)). This Court's directive that the ALJ re-assess Price's RFC, considering both her severe and non-severe impairments, forecloses the need to address this issue. If the ALJ concludes that Price's depression does not affect her RFC, the Regulations do not require the ALJ to consult a VE. If, on the other hand, the ALJ determines

that her nonexertional impairment does limit her ability to perform a full range of sedentary work, consulting a VE will become necessary. However, because it is so closely intertwined with the issue requiring remand, this issue is moot.

## VI. Conclusion

Because the ALJ did not properly consider all of Price's impairments, the Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings under sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED** this 22nd day of September 2016.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE